UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRADLEY JOHNSON,

               Plaintiff,                       Case No. 1:22-cv-710

v.                                          Honorable Ray Kent

UNKNOWN AUSTIN-OLMOS et al.,

               Defendants.
_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

The Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against Defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendant-Correctional Officers Unknown Austin-Olmos, Unknown Maddox, Unknown Funk, Unknown Eggleton, Unknown Barrett, Unknown Anderson, and Defendant Warden Matt Macauley. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against Defendant Houghton, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment claim for deliberate indifference, Fourteenth Amendment claim for violation of Plaintiff's right to equal protection, and all claims against Defendant Houghton in his official capacity. Plaintiff's First Amendment retaliation and state law claims against Defendant Houghton remain in the case.

**Discussion**

## I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility (ARF) in Adrian, Lenawee County, Michigan. The events about which he complains occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues Bellamy Creek Correctional Officers Unknown Austin-Olmos, Unknown Maddox, Unknown Funk, Unknown Eggleton, Unknown Barrett, and Unknown Anderson. Plaintiff also sues Prison Counselor Unknown Houghton and Warden Matt Macauley. Each Defendant is sued both individually and officially.

Plaintiff alleges that, in February 2021, Plaintiff filed a grievance after photographs of children sent to him via JPay were rejected. (Compl., ECF No. 1, PageID.5.) During a grievance hearing conducted by Defendant Houghton, Defendant Houghton stated to Plaintiff: "You're a pedophile living with gang bangers and killers, and you want to stir shit up about pictures . . . of kids?" (*Id.* (ellipses in original).) When Plaintiff asked that Defendant Houghton not call Plaintiff a pedophile, adding, "my business concerns nobody except for me," Defendant Houghton replied: "Your business concerns every motherf***** who cares about children. I suggest you close shop before it's too late." (*Id.*, PageID.5–6.) Although Defendant Houghton concluded that the photos in question were not in violation of prison policy, when Plaintiff offered to withdraw his grievance in exchange for the photos, Defendant Houghton responded "that it would be in Plaintiff's best interest to sign off the grievance and to '. . . forget about the [photos of] cute little girls.'" (*Id.*,

4

PageID.6 (ellipses in original).) Plaintiff initially refused to withdraw his grievance, to which Defendant Houghton again stated: "Pedophile . . . gang bangers and killers . . . pictures of cute little girls? Yeah, you get the drift?" (*Id.* (ellipses in original).) Plaintiff ultimately withdrew his grievance. (*See id.*) Defendant Houghton is not mentioned again within Plaintiff's complaint.

Approximately one week later, on February 17, 2021, Defendants Austin-Olmos, Maddox and Funk arrived at Plaintiff's cell and opened the door. (*Id.*, PageID.7.) As Plaintiff prepared to exit, Defendants Austin-Olmos and Funk loudly questioned Plaintiff regarding his gender identity. (*Id.*)[2] Defendants Austin-Olmos, Maddox and Funk also questioned Plaintiff as to why he was in prison, referencing Plaintiff's convictions for sexually abusing children, and asking whether Plaintiff had sexually abused children depicted in pictures on Plaintiff's JPay account. (*Id.*) Plaintiff's complaint gives no indication that these photographs were related to those withheld by Defendant Houghton, described above. Defendants Austin-Olmos and Funk announced loudly that Plaintiff likes to sexually abuse children, including his own, and that Plaintiff was writing a book about it. (*Id.*, PageID.8.) Plaintiff claims that Defendant Funk ordered Plaintiff to kill himself and that Defendants Austin-Olmos, Maddox and Funk performed a shakedown of Plaintiff while referencing Plaintiff's gender non-conforming identity. (*Id.*, PageID.7–8.)

Plaintiff goes on to describe, in graphic detail, several instances of threats, sexual exploitation, damage to property, and physical and emotional harm by or at the behest of Defendants Austin-Olmos, Maddox, Funk, Barrett, Eggleton, and Anderson. Plaintiff claims that the actions of these Defendants were motivated by Plaintiff's crimes against children, Plaintiff's identity as gender non-conforming, and Plaintiff's subsequent grievances and planned lawsuits.

---

[2] Plaintiff references Plaintiff's "gender identity" and comments by Defendants regarding feminine characteristics. Because Plaintiff uses he/him/his pronouns throughout the complaint, the Court does the same.

Plaintiff informed Defendant Macauley of various actions by Defendants and that Plaintiff had attempted suicide, but Defendant Macauley ignored Plaintiff's complaints and requests. As a result of the actions of these Defendants, Plaintiff alleges that he has suffered severe physical, mental and emotional pain and suffering.

Plaintiff brings the following labeled as "Counts" against Defendants: "Count 1: Retaliation" against Defendants Austin-Olmos, Maddox, Funk, Houghton, and Anderson; "Count 2: Deliberate Indifference" against Defendants Austin-Olmos, Maddox, Funk, Houghton, and Barrett; "Count 3: Discrimination" against Defendants Austin-Olmos, Funk, Eggleton, and Barrett; "Count 4: Failure to Protect" against Defendant Macauley; and "Count 5; State Tort: Intentional Infliction of Emotional Distress" against Defendants Austin-Olmos, Maddox, Funk, Houghton, and Eggleton. (*Id.*, PageID.24–27.) Plaintiff seeks a declaratory judgment and compensatory and punitive damages. (*Id.*, PageID.27–28.)

## II.   Misjoinder

Plaintiff brings this action against eight Defendants, alleging several events occurring over the course of months. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A.   Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of

6

transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved,

and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three

8

strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event that Plaintiff describes in the complaint relates to Defendant Houghton's investigation of Plaintiff's grievance in February 2021. Plaintiff describes an interaction between Plaintiff and Defendant Houghton only; there is no indication that any other Defendant was involved in or informed of the same. Plaintiff alleges that, in the process of reviewing Plaintiff's grievance, Defendant Houghton threatened Plaintiff, stating: "You're a pedophile living with gang bangers and killers, and you want to stir shit up about pictures. . . of kids?" (ECF No. 1, PageID.6 (ellipses in original).) Although Defendant Houghton concluded that the photographs sent to Plaintiff via JPay were not in violation of any MDOC policy, he explained that "it would be in Plaintiff's best interest to sign off the grievance and to '. . . forget about the cute little girls.'" (*Id*. (ellipses in original).) When Plaintiff offered to sign off on the grievance in exchange for the photographs, Defendant Houghton again threatened Plaintiff, referencing the "gang bangers and killers" living with Plaintiff. (*Id*.) Plaintiff ultimately withdrew his grievance because of Defendant Houghton's statements without receiving the JPay images which were the subject of Plaintiff's grievance. There are no facts within the complaint to plausibly

suggest that Defendant Houghton communicated information about Plaintiff to anyone following Plaintiff's withdrawal of his grievance as requested. Indeed, Defendant Houghton is not mentioned again within the factual allegations of Plaintiff's complaint.

The allegations which follow concern the actions of seven additional Defendants, unconnected to Plaintiff's original grievance discussed in paragraphs 12 through 20 of Plaintiff's complaint. In describing the statements by, and motivations of, the remaining Defendants, Plaintiff references aspects of Plaintiff's gender identity and draft autobiography, which were not the subject of Plaintiff's interaction with Defendant Houghton, as well as Plaintiff's convictions for crimes against children, which remain public record. Although Defendants Funk (*id.*, PageID.7) and Austin-Olmos (*id.*, PageID.9, 14) referenced images of children on Plaintiff's JPay gallery in their interactions with Plaintiff, it appears that these were images in Plaintiff's possession, separate from those *withheld from* Plaintiff in connection with the earlier-discussed grievance. In fact, Defendant Austin-Olmos noted that they "discovered a lot of contraband and paperwork linked to kiddie porn" in Plaintiff's personal belongings, (*id.*, PageID.9) and that Plaintiff "has an arsenal of adorable little girls in his gallery, half naked," (*id.*, PageID.14). If true, this suggests JPay documents found to be in Plaintiff's possession, not those withheld by Defendant Houghton.

Plaintiff may join all claims he has against Defendant Houghton and all claims against others arising out of the interaction concerning Plaintiff's original grievance discussed in paragraphs 12 through 20 of Plaintiff's complaint. However, taking Plaintiff's allegations as true, Plaintiff's claims against Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley do not arise out of the same transaction or occurrence that gives rise to Plaintiff's claim against Defendant Houghton. Accordingly, the Court concludes that Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley are misjoined.

### B.      Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely

claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claim against Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley, and has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*. Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. Plaintiff is cautioned that failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

### III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff brings three claims against Defendant Houghton: First Amendment retaliation (Count 1), Eighth Amendment deliberate indifference (Count 2), and state common law intentional infliction of emotional distress (Count 5).

### A.    First Amendment Retaliation

Plaintiff claims that Defendant Houghton violated Plaintiff's First Amendment rights when Defendant Houghton threatened to subject Plaintiff to harm by the prison's "gang bangers and killers" if Plaintiff refused to withdraw his grievance and forgo receipt of pictures sent to Plaintiff's JPay account.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's complaint contains limited details about Plaintiff's original grievance and its subject photographs. Taking Plaintiff's allegations as true, as is required at this stage, the Court assumes without deciding that Plaintiff engaged in protected conduct when he filed his grievance and received materials found not to violate any prison policy. Accordingly, Plaintiff's First Amendment claim against Defendant Houghton cannot be dismissed on screening.

14

### B.      Eighth Amendment Deliberate Indifference

Plaintiff's Eighth Amendment claim against Defendant Houghton is unclear. Plaintiff generally asserts that several Defendants, including Defendant Houghton, were deliberately indifferent to Plaintiff's "safety and medical needs" in "creating for Plaintiff a hostile environment, soliciting Plaintiff for sex, demanding Plaintiff to commit suicide, and denying Plaintiff medical care to remedy his suicidal tendencies . . . ." (ECF No. 1, PageID.25.) However, Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendant Houghton engaged in, or caused any of, the foregoing conduct.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

15

In order for a prisoner to prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

To the extent that Plaintiff takes issue primarily with Defendant Houghton's threats to subject Plaintiff to harm by the prison's "gang bangers and killers" if Plaintiff refused to withdraw his grievance, this does not state an Eighth Amendment claim. Allegations of verbal harassment or threats by prison officials toward an inmate, though unprofessional, do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.*

Likewise, though prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care, *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984), there is no indication within Plaintiff's complaint that Defendant Houghton breached this obligation and caused any of the subsequent harm alleged. Accordingly, the Court finds that Plaintiff fails to plead

sufficient facts to support a claim against Defendant Houghton for violation of Plaintiff's Eighth Amendment rights.

### C. Official Capacity Claims

In addition to bringing claims under § 1983 against Defendant Houghton individually, Plaintiff brings claims against Defendant Houghton in his official capacity. For the reasons set forth below, the Court will dismiss all "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against a Defendant employed by the MDOC are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54.

Here, Plaintiff seeks monetary damages, as well as a declaratory judgment, "declaring that the acts and omissions of the defendants as pleaded in this complaint have violated Plaintiff's rights, and stating the defendants' duties with respect to those rights." (Compl., ECF No. 1, PageID.27.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff also does not request injunctive or declaratory relief that is prospective in nature, such that relief against an official capacity defendant would be available pursuant to *Ex Parte Young*, 209 U.S. 123, 159–60 (1908). Therefore, Plaintiff's official capacity claims against Defendant Houghton are properly dismissed on grounds of immunity.

### D.    State Law Intentional Infliction of Emotional Distress

Finally, Plaintiff brings a claim against Defendant Houghton for intentional infliction of emotional distress under Michigan state common law. In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy

and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff continues to have federal claims against Defendant Houghton, the Court will exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Houghton.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will drop as misjoined Defendants Austin-Olmos, Maddox, Funk, Eggleton, Barrett, Anderson, and Macauley. The Court will dismiss Plaintiff's claims against these Defendants without prejudice. The Court will also dismiss, for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Plaintiff's Eighth Amendment claim against Defendant Houghton for deliberate indifference and all claims against Defendant Houghton in his official capacity. Plaintiff's claims against Defendant Houghton for First Amendment retaliation and state law intentional infliction of emotional distress remain in the case.

An order consistent with this opinion will be entered.

Dated:   December 7, 2022            /s/ Ray Kent
                                     Ray Kent
                                     United States Magistrate Judge